UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 09-22354-CIV-HUCK

LAUDY R. IBARRA,

      Plaintiff,

vs.

LINDA SWACINA,

      Defendant.

_____/

**CLOSED
CIVIL
CASE**

## ORDER GRANTING MOTION TO DISMISS

This matter is before the Court on a motion to dismiss Plaintiff's amended complaint by Defendant Linda Swacina, the district director of the bureau of the United States Citizenship and Immigration Service (USCIS) for the Miami and Caribbean District. The Plaintiff, Laudy R. Ibarra, is a Venezuelan national who claims Cuban citizenship based on her father's birth in Cuba. Plaintiff initially filed a mandamus action in this Court seeking to compel the USCIS to adjudicate her application for adjustment of status (also known as an I-485 application), and to become a lawful permanent resident, under the Cuban Adjustment Act of 1966. 80 Stat. 1161, Pub. L. No. 89-732. Subsequently, when the USCIS denied Plaintiff's application, the Court dismissed the complaint as moot and granted Plaintiff leave to file an amended complaint.

Plaintiff filed an amended complaint challenging the USCIS's actions in denying her application, which she claims are a pretext for the agency's hostility to Cuban Adjustment Act applicants born in countries other than Cuba. The principle relief Plaintiff seeks is an order directing Defendant to certify her application for review by the USCIS Administrative Appeals Office, an internal agency appeal. Plaintiff also asserts a due process challenge to the procedures employed in denying her application and seeks judicial review of the USCIS's decision. The Court has reviewed the amended complaint, Defendant's motion, the response and reply, and is otherwise fully advised. For the reasons set forth below, the Court will grant Defendant's motion to dismiss.

I.    **BACKGROUND**

    A.    **Statutory Framework for Adjustment of Status**

The decision to grant an adjustment of status application is committed by statute to the discretion of the Attorney General:

> The status of an alien who was inspected and admitted or paroled into the United States . . . *may* be adjusted by the Attorney General, *in his discretion* and under such

regulations *as he may prescribe*, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added).  The language of the Cuban Adjustment Act mirrors that of § 1255(a) in providing that the status of Cuban citizens and their dependants, who are physically present in the United States,

*may* be adjusted by the Attorney General, *in his discretion* and under such regulations *as he may prescribe*, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence.

Cuban Adjustment Act § 1, 80 Stat. 1161, Pub. L. No. 89-732 (emphasis added).[1]

Because the "decision to grant an adjustment of status is purely discretionary" and constitutes "an extraordinary remedy to be granted only in meritorious cases," the alien bears the burden of proof and of persuading the USCIS to exercise its discretion favorably.  *Eide-Kahayon v. INS*, 86 F.3d 147, 150 (9th Cir. 1996) (quoting *Kim v. Meese*, 810 F.2d 1494, 1497 (9th Cir. 1987); *see also Singh v. Gonzales*, 404 F.3d 1024, 1028 (7th Cir. 2005) (alien seeking adjustment of status "bears burden of proving that he merits favorable exercise of discretion based on equitable considerations") (citing *Dashto v. INS*, 59 F.3d 697, 704 (7th Cir. 1995)); *Mamoka v. INS*, 43 F.3d 184, 188 (5th Cir. 1995) ("The applicant [for adjustment of status] bears the burden of proving that his application merits a favorable exercise of discretion, which is an extraordinary act and a matter of grace.") (quotations omitted); *Choe v. INS*, 11 F.3d 925, 933 (9th Cir. 1993) ("In a petition for review of an adjustment of status case . . . the alien bears the burden of proof and of persuasion to show that the discretionary award of the privilege is warranted[.]"); *Randall v. Meese*, 854 F.2d 472, 486 (D.C. Cir. 1988) ("the grant of an [adjustment of status] application is a matter of discretion and administrative grace" and "the applicant has the burden to show that discretion should be exercised in her behalf").

### B.    Regulatory Framework for Certification for Internal Agency Appeal

In general, district directors have discretion under the regulations to certify immigration cases for internal agency appeal, but in the case of adjustment of status applications the regulations do not

---

[1]     After 9/11, Congress created the Department of Homeland Security and the authority to adjudicate applications for adjustment of status was transferred to the Secretary of Homeland Security and the USCIS. *See* 6 U.S.C. §§ 271(b)(5), 557.  Much of the existing case law, however, refers to the authority of the Attorney General, and, for ease and consistency, this Order also refers to the authority and discretion of the Attorney General under the relevant immigration statutes and regulations.

provide for internal appellate review because the claimant may renew her application during removal proceedings. Generally, district directors "*may* certify their decisions" for internal agency appeal "when the case involves an unusually complex or novel issue of law or fact." 8 C.F.R. § 103.4(a). In the case of an application for adjustment of status, however, the regulations provide that "[n]o appeal lies from the denial of an application by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in [removal] proceedings[.]" 8 C.F.R. § 1245.2(a)(5)(ii).

### C.    Limitations on Judicial Review Under the Immigration and Nationality Act

Notwithstanding these regulations, Plaintiff argues that USCIS internal operating instructions and the adjudicator's field manual provide that denials of adjustment of status applications under the Cuban Adjustment Act should be certified for appeal. Plaintiff contends that these provisions provide legal authority to order the USCIS to certify her case for internal agency appeal. Defendant argues that these are internal guidelines which do not create any substantive rights upon which Plaintiff may rely, and that the Court lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii) because the decision to certify a case for appeal is committed to agency discretion. Section 1252(a)(2)(B)(ii) states that

> no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter [8 U.S.C. §§ 1151-1381] to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

Plaintiff argues that the Court has jurisdiction under *Mejia Rodriguez v. Dep't of Homeland Security*, 562 F.3d 1137 (11th Cir. 2009), which held that judicial review of USCIS denials based on determinations of legal ineligibility—as opposed to denials based on the agency's discretion—is not barred by § 1252(a). *Mejia Rodriguez* does not apply to this case, however, because the decision to certify cases for internal appeal is clearly discretionary and, as the Court will explain below, the decision denying Plaintiff's application cannot be reviewed at this time because of the APA's exhaustion and finality requirements.

### D.    The USCIS's Decision Denying Plaintiff's Application

The USCIS found that Plaintiff failed to meet her burden of proof because it concluded that the documents Plaintiff presented in support of her application were not genuine. The agency's written decision indicates that the denial was based on two grounds, the first discretionary and the second legal:

> It is the determination of the Field Office Director that you have failed to meet your burden of proof as there are some serious concerns regarding the documents you submitted in support of you adjustment of status application and their validity.

It is *also* the determination of the Field Office Director that you fall under the purview of Section 212(a)(6)(C)(i) of the Act and as you do not possess the requisite family relationships to apply for a waiver of inadmissibility, your application to Register Permanent Resident or Adjust Status (Form I-485) under Section 1 of the Cuban Adjustment Act is denied.

Doc. 21-1 at 2 (emphasis added).

Section 212(a)(6)(C)(i) of the Immigration and Nationality Act excludes from the United States aliens who seek to procure immigration benefits by fraud or misrepresentation (barring a finding of the Attorney General that excluding the alien would result in extreme hardship to a lawful resident spouse or parent). The Court will not examine the grounds for denial, however. As explained below, no review of the agency's decision is permitted at this time because Plaintiff has failed to exhaust her administrative remedies.

### E.    Plaintiff's Amended Complaint

Following the agency's denial of her application, Plaintiff filed an amended complaint containing three counts, each challenging a different part of the adjustment of status process. Count I is a challenge under the Due Process Clause of the Fifth Amendment to the procedures the agency employed in adjudicating Plaintiff's application. Plaintiff claims that she was not given constitutionally required notice and an opportunity to rebut the grounds upon which the USCIS relied in denying her application. Count II complains that Defendant failed to certify Plaintiff's case for internal appellate review. Count III claims that the agency's findings on Plaintiff's application were erroneous legal determinations. Plaintiff seeks an order from the Court instructing the USCIS to certify her case for internal appellate review or, alternatively, to review the denial of her application.

## II.    STANDARD FOR MOTION TO DISMISS UNDER RULE 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a civil action for lack of subject matter jurisdiction. The court is required to dismiss the action whenever it appears that the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). The Eleventh Circuit has established that attacks on subject matter jurisdiction can be facial or factual. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008) (quotations and citations

omitted). However, "the burden to establish the existence of federal subject matter jurisdiction rests with the party bringing the claim." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005); *see also Ishler v. Internal Revenue*, 237 Fed. Appx. 394, 395 (11th Cir. 2007) ("Ultimately, the plaintiff bears the burden of establishing subject matter jurisdiction.").

## III.   ANALYSIS

Defendant's motion to dismiss is a facial challenge to subject matter jurisdiction. The amended complaint states that the Court has federal question jurisdiction under the Administrative Procedures Act. 5 U.S.C. § 551 *et seq.* However, the allegations in the amended complaint are insufficient to establish subject matter jurisdiction.

### A.   Plaintiff's Claim that USCIS Procedures Violated Due Process (Count I)

Plaintiff argues that she was denied due process because she was not given notice and an opportunity to contest the grounds on which her application was denied. Due process challenges relating to government benefits are analyzed under the framework established by the Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564 (1972) and *Matthews v. Eldridge*, 424 U.S. 319 (1976). Under *Roth*, the claimant must establish that she has a property interest in a government benefit and, if she does, the test established in *Matthews* determines how much process is due. But the law is clear that there is no entitlement whatsoever to an adjustment of status. Plaintiff has no property interest and, as such, the process for adjudicating adjustment of status applications is governed by agency discretion and jurisdiction is barred by 8 U.S.C. § 1252(a)(2)(B)(ii).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577; *see also Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280 n.2 (1998) ("[Plaintiff] must have a protected life or liberty interest in the application process. Otherwise . . . he is asserting merely a protected interest in process itself, which is not a cognizable claim.").

Because Congress possesses plenary power over immigration and aliens have no constitutional right to enter or remain in the United States, an entitlement to an immigration benefit must be conferred by statute. *See* U.S CONST. Art. I, § 8, cl. 4 (providing that "Congress shall have the Power . . . To establish an uniform Rule of Naturalization"); *INS v. Chadha*, 462 U.S. 919, 940 (1983) ("The plenary authority of Congress over aliens under [the Naturalization Clause] is not open to question."); *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) ("The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they

5

may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications.") (quoting *Lem Moon Sing v. United States*, 158 U.S. 538, 547, (1895)); *Gibbons v. Ogden*, 22 U.S. 1, 197 (1824) ("the sovereignty of Congress, though limited to specified objects, is plenary as to those objects").

Congress did not create a statutory entitlement to adjustment of status when it enacted 8 U.S.C. § 1255(a) or § 1 of the Cuban Adjustment Act. *See Elkins v. Moreno*, 435 U.S. 647, 667 (1978) ("[A]djustment of status is a matter of grace, not right[.]"); *Wallace v. Gonzales*, 463 F.3d 135, 137 (2d Cir. 2006) ("Adjustment of status is a matter of grace, not of right, and the evaluation of such applications is left to the discretion of the Attorney General."). Instead, Congress set statutory prerequisites that must exist before the Attorney General can exercise his discretion to adjust status. 8 U.S.C. 1255(a); Cuban Adjustment Act § 1, 80 Stat. 1161, Pub. L. No. 89-732. Even when all the statutory prerequisites to adjustment of status are met, the Attorney General still has discretion to deny the application. *Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1198 (M.D. Fla. 2007). Accordingly, under *Roth*, no alien possesses a legitimate claim of entitlement to adjustment of status.

Plaintiff's due process argument principally relies on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), where the Supreme Court upheld a due process challenge to agency procedures under the Immigration Reform Act of 1986. *McNary* is distinguishable from this case, however, because the Immigration Reform Act created an "amnesty program" which provided certain aliens with a *statutory entitlement* to legal status as "special agricultural workers." *Id.* at 483-84. The statute at issue in *McNary* provided that "the mere filing of a 'non-frivolous application' entitled the alien to a work authorization that would remain valid during the entire period that the application was being processed." *Id.* at 484 (quoting 8 U.S.C. § 1160(d)(2)(B)). In contrast to the discretionary provisions governing adjustment of status applications, the Immigration Reform Act created a clear, non-discretionary entitlement by providing that, upon filing of the application, "the alien . . . *shall* be granted authorization to engage in employment in the United States[.]" 8 U.S.C. § 1160(d)(2)(B).

Another important difference between the adjustment of status framework and the statutory framework at issue in *McNary* is found in the respective provisions limiting judicial review. The Supreme Court found it significant in its decision to exercise jurisdiction that the Immigration Reform Act prohibited review "of a *determination* respecting an application for adjustment of status." 8 U.S.C. § 1160(e)(1) (emphasis added); *McNary*, 498 U.S. at 492 ("Significantly, the

6

reference to 'a determination' describes a single act rather than a group of decisions or a *practice or procedure* employed in making decisions.") (emphasis added). But for ordinary adjustment of status applications, including those under the Cuban Adjustment Act, courts have no jurisdiction to review "*any judgment* regarding the granting of relief" or "*any other decision or action* of the Attorney General or the Secretary of Homeland Security" pertaining to adjustment of status. 8 U.S.C. § 1252(a)(2)(B)(i),(ii) (emphasis added).[2]

The Court finds persuasive the interpretations of several district courts who, in considering challenges to the pace of adjudication, have explained that the term "action" in 8 U.S.C. § 1252(a)(2)(B)(ii) encompasses the entire process of adjudication; otherwise the inclusion of the term "action" in addition to "decision" is surplusage. *See Eldeeb*, 619 F. Supp. 2d at 1202 (because the adjustment of status statute "does not impose any limits on CIS' discretionary authority over the adjustment of status process, 'action' means the entire process of reviewing an adjustment application"); *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1353-54 (S.D. Fla. 2007) (jurisdiction stripping provision "encompasses *any* act or series of acts that are discretionary within the adjustment of status process") (quotations omitted); *Safadi v. Howard*, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006) ("it is clear that 'action' in § 1252(a)(2)(B)(ii) encompasses the *entire* process of reviewing an adjustment application").

Like the adjustment of status statute, 8 U.S.C. § 1255(a), the Cuban Adjustment Act "limits the Attorney General's discretion by providing that he may adjust the status of an alien only if certain prerequisites are met" but "places no further limitations on the Attorney General's discretion." *Qiu v. Chertoff*, 486 F. Supp. 2d 412, 419 (D.N.J. 2007). It is therefore of no moment whether the USCIS is favorably disposed towards applicants under the Cuban Adjustment Act because the Act, and decisions interpreting it, only implicate an applicant's legal *eligibility* for adjustment of status—they do not otherwise limit the Attorney General's discretion over the treatment or outcome of the applications.

Accordingly, because the entire process of adjudicating adjustment applications is committed to the discretion of the Attorney General and Plaintiff has no right to an adjustment of status, the

---

[2]   *Campos v. I.N.S.*, 70 F. Supp. 2d 1296 (S.D. Fla. 1998), also relied upon by Plaintiff, is distinguishable because *Campos* involved a challenge to the naturalization process, which is not covered by the jurisdictional limitations in 8 U.S.C. § 1252(a)(2)(B)(ii). *Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953), which involved the detention of an alien, is likewise distinguishable because it dealt with a deprivation of the alien's physical liberty and not the denial of a discretionary immigration benefit.

Court finds that it lacks jurisdiction to review Plaintiff's challenge to the adjustment of status application process.

**B.     Plaintiff's Right to an Internal Agency Appeal (Count II)**

Plaintiff wants the Court to order the USCIS to certify her case for an internal agency appeal. This claim is based on the Administrative Procedures Act. However, judicial review is not permitted under the APA when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Because the jurisdiction stripping provision in 8 U.S.C. § 1252(a)(2)(B)(ii) also hinges on whether the decision to certify a case for appeal is committed to the agency's discretion, the inquiry is the same under either criteria.

Generally, "district directors . . . *may* certify their decisions" for appeal "when the case involves an unusually complex or novel issue of law or fact." 8 C.F.R. 103.4(a) (emphasis added). Plaintiff does not allege that the denial of her application, which hinged on what appears to be a routine evaluation of the veracity of the evidence she presented, involved an unusually complex or novel issue of law or fact. Instead, she bases her claim on internal agency documents (the USCIS Operating Instructions and the Adjudicator's Field Manual) that appear to contradict the regulations by requiring the district director to certify for appeal the denial of applications for adjustment of status under the Cuban Adjustment Act, without regard for whether the case presents complex or novel issues of fact or law. *See* USCIS O.I. 245(b); Adjudicator's Field Manual 23.11. Defendant cites other guidelines, and claims that they do not call for certification in these circumstances, but the Court needn't decide who is correct because under Eleventh Circuit precedent Plaintiff cannot base her claim on internal agency materials.

The Eleventh Circuit has held that internal agency guidelines and operating instructions do not create substantive rights and lack the force and effect of law. These materials are considered internal guidelines for the convenience of agency employees, but do not confer substantive rights independent of statutes or regulations. *Haitian Refugee Ctr. v. Baker*, 953 F.2d 1498, 1511 (11th Cir. 1992); *Pasquini v. Morris*, 700 F.2d 658, 659, 662 (11th Cir. 1983). In *Pasquini*, for instance, the plaintiffs cited to mandatory provisions in the INS internal operating instructions similar to those relied on by Plaintiff here. *Compare* 700 F.2d at 661 ("the district director . . . *shall* recommend consideration for deferred action category") (quoting O.I. 103.1(a)(1)(ii) (1983)) *with* USCIS O.I. 245.5(b) ("the applicant *shall* be notified . . . that the case has been certified") (emphasis added).

Accordingly, Plaintiff cannot rely on USCIS operating instructions or the adjudicator's field manual, because neither document confers substantive, judicially enforceable rights. Additionally,

although appeals are generally available when complex issues of law or fact are present, the regulations provide that in adjustment of status applications no appeal lies because of the alien's ability to renew her application during removal proceedings. *See* 8 C.F.R. § 1245.2(a)(5)(ii). In any event, and assuming that the agency can certify the case for appeal, the Court lacks jurisdiction under the APA and § 1252(a)(2)(B)(ii) because the authority to certify cases for appeal is solely within the discretion of the district director.

### C.   Judicial Review of the USCIS's Denial of Plaintiff's Application (Count III)

Plaintiff's final claim challenges the legality of the USCIS's decision to deny her application. Plaintiff contends that the decision should be set aside for failing to follow the law. Defendant argues that Plaintiff has not exhausted her administrative remedies because she will have the opportunity to renew her application in removal proceedings before an immigration judge. *See* 8 C.F.R. § 1245.2(a)(5)(ii) ("No appeal lies for the denial of an application [for adjustment of status] by the [district] director . . . [but the applicant] retains the right to renew his or her application in [removal] proceedings[.]")

The APA requires that plaintiffs exhaust all administrative remedies before judicial review of agency action is available. Agency action is reviewable only when it is a "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704. Accordingly, "[i]t is well settled that ordinarily courts will not interfere with an agency until it has completed its action and that administrative remedies may be bypassed only if (1) the agency has clearly violated a right secured by statute or agency regulation, (2) the issue involved is a strictly legal one not involving the agency's expertise or any factual determinations, or (3) the issue cannot be raised upon judicial review of a later order of the agency." *Borden, Inc. v. FTC*, 495 F.2d 785, 786-87 (7th Cir. 1974) (citations omitted). None of these exceptions apply here: (1) No established right was violated, (2) the USCIS's decision rested on a factual analysis of the documents Plaintiff submitted in support of her application and therefore the issue is not a "strictly legal one," and (3) juridical review will be available following removal proceedings.

Plaintiff argues that jurisdiction is proper under *Mejia Rodriguez v. Dep't of Homeland Security*, 562 F.3d 1137 (11th Cir. 2009), which held that judicial review of USCIS denials based on determinations of legal ineligibility—as opposed to denials based on the agency's discretion—is not barred by § 1252(a). *Mejia Rodriguez* does not apply to this case, however, because of the APA's exhaustion requirement. In *Mejia Rodriguez*, the court found that the alien had exhausted his administrative remedies because he had complied with the administrative remedies provided by

statute and regulation. *See id.* at 1145 n.16 ("the Supreme Court has explained that the APA 'explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule'") (quoting *Darby v. Cisneros*, 509 U.S. 137, 146 (1993)). Unlike in *Mejia Rodriguez*, which concerned an application for "Temporary Protected Status," in the case of an adjustment of status application the regulations clearly contemplate that aliens will renew their claims during removal proceedings. *See* 8 C.F.R. § 1245.2(a)(5)(ii) (stating that the alien retains the right to renew her adjustment of status application in removal proceedings).

Plaintiff does not deny that she may renew her application before an immigration judge in removal proceedings. Although the Eleventh Circuit has not weighed in on this issue, four other courts of appeals have held that district courts lack jurisdiction to review denials of an adjustment of status applications because of the availability of an administrative remedy during removal proceedings. *Cardoso v. Reno*, 216 F.3d 512 (5th Cir. 2000); *McBrearty v. Perryman*, 212 F.3d 985 (7th Cir. 2000); *Randall v. Meese*, 854 F.2d 472 (D.C. Cir. 1988); *Howell v. INS*, 72 F.3d 288 (2d Cir. 1995); *see also Davies v. Gonzalez*, No. 6:06-cv-1436-Orl-31UAM, 2007 WL 2120312, 2007 U.S. Dist. LEXIS 52924 (M.D. Fla. July 23, 2007) (adopting the majority position and holding that the district court lacked jurisdiction because plaintiff could renew her claims during removal proceedings). And two of these courts held that the district court lacked jurisdiction even though (as in this case) no removal orders were then pending. *Cardoso*, 216 F.3d at 518 (court lacked jurisdiction because plaintiff could renew her request for adjustment of status "upon commencement of removal proceedings); *McBrearty*, 212 F.3d at 987 (suit was premature because plaintiffs "could obtain review of the district director's decision . . . *if and when* the immigration service institutes removal (i.e., deportation) proceedings against them") (emphasis added). Only the Ninth Circuit has held that district courts may exercise jurisdiction under these circumstances. *See Chan v. Reno*, 113 F.3d 1068, 1071 (9th Cir. 1997); *Jaa v. INS*, 779 F.2d 569, 571 (9th Cir. 1986).

The Court finds that that the majority position is most consistent with the APA's exhaustion requirement. Plaintiff has an adequate remedy in removal proceedings, because she will have the opportunity to renew her application for adjustment of status and argue the merits *de novo* before an immigration judge.[3] Moreover, 5 U.S.C. § 704 limits judicial review under the APA to final agency

---

[3]     Under the Cuban Adjustment Act, Plaintiff must establish that she herself is a Cuban citizen or native, otherwise she is not entitled to adjustment of status because she does not "reside" with her Cuban father, who she claims is deceased. *See* Cuban Adjustment Act § 1, 80 Stat. 1161, Pub. L. No. 89-732 (stating that the Attorney General may adjust the status of a "native or citizen of Cuba" or "the spouse and child of [a Cuban citizen or native] . . . regardless of their citizenship and

actions, which the Supreme Court has defined as actions which "mark the consummation of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). But since Plaintiff is entitled to reargue the merits of her adjustment application during removal proceedings, and the immigration judge is empowered to grant the application if he finds that Plaintiff has satisfied the statutory prerequisites for adjustment of status and has met her burden of persuasion that the USCIS should exercise its discretion in her favor, the agency's denial of Plaintiff's application cannot constitute "final agency action" under *Bennett*. Therefore, because review is not permitted at this time under 5 U.S.C. § 704, the Court lacks jurisdiction to review the agency's decision to deny Plaintiff's adjustment of status application.[4]

## IV.   CONCLUSION

For the reasons set forth above, the Court finds that it lacks subject matter jurisdiction over Plaintiff's Complaint. Defendant's motion to dismiss (D.E. 22) is GRANTED. The Amended Complaint (D.E. 21) is DISMISSED WITH PREJUDICE and the Clerk is directed to CLOSE THIS CASE.

DONE AND ORDERED in Chambers, Miami, Florida, December 3, 2010.

Paul C. Huck
United States District Judge


Copies furnished to:
Counsel of Record

---

place of birth, who are residing with such alien in the United States"); *Gonzalez v. McNary*, 765 F. Supp. 721, 723 (S.D. Fla. 1991) ("[I]t is clear that in enacting this Act Congress intended for the law to mandate . . . residence with the Cuban alien.").

    [4]      It should also be noted that insofar as the agency's decision was based on an exercise of discretion, jurisdiction would also be barred by 8 U.S.C. § 1252(a)(2)(B)(ii).